UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **SERGIO A. CADAVID,** <br> Petitioner, <br> v. <br> WILLIAM SULLIVAN, Warden, <br> Respondent. | **Case No. LA CV 04-00289-VBF-PJW** <br> **ORDER** <br> Adopting Report & Recommendation in Part; <br> **Denying the Habeas Petition in Its Entirety;** <br> Directing Entry of Separate Judgment; <br> Terminating the Action (JS-6) |

    Petitioner brought this action pursuant to 28 U.S.C. § 2254 for habeas corpus relief from his state-court convictions for first-degree residential burglary and first-degree residential attempted robbery, i.e., robbery of a person in an inhabited dwelling house. Per Fed. R. Civ. P. 72(b)(3), the Court has reviewed de novo the portions of the R&R to which a party specifically objected.

    **The Court finds petitioner's objections to be meritless.** Accordingly, the Court will deny his claims of ineffective assistance of counsel ("IAC") as to his trial attorney's failure to interview the police officers and medical personnel who saw petitioner when he was being transported to Saint Francis Medical Center ("Saint Francis") after his flight from the victim's apartment, or when he was at Saint Francis (R&R 34:17 - 35:15); her allegedly erroneous, inadequate, or misleading advice to, or coercion of, plaintiff when advising him to waive his right to a jury trial (R&R 35:16 - 39:19); and her "failure" to object to the elderly, infirm victim testifying from home (R&R 39:20 - 46:26).

    To the extent that petitioner seeks relief due to counsel's "failure" to move for a new trial due

1  to the investigation of the trial judge, he fails to show that such a motion likely would have
2  succeeded.  Under *Strickland*, counsel does not render ineffective assistance by not filing a motion
3  that was meritless or likely would have failed.  *See James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994).[1]

4  **Next, the R&R employs de novo review of the state courts' rejection of these claims,**
5  **while respondent urges deferential review.**  The Court need not resolve this issue.  "Because the
6  Court of Appeal's decision was 'correct under de novo review,' it was 'therefore necessarily
7  reasonable under the more deferential AEDPA standard of review.'"  *Lucero v. Holland*, – F.3d –,
8  2018 WL 4167142, *4 (9th Cir. Aug. 31, 2018) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 389,
9  130 S. Ct. 2250 (2010)); *see also, e.g., Walker v. Felker*, 318 F. App'x 455, 457 (9th Cir. 2008).

10  **Respondent's objections are well-taken, however, as to the prejudice prong of the IAC**
11  **mental-condition claim.**  *Contra* R&R 28 line 1 through 34 line 17, the Court will deny that claim
12  for reasons set forth below.  Even if counsel performed deficiently in presenting this defense,
13  petitioner fails to carry his burden of showing that he suffered *Strickland* prejudice.  *See Walker v.*
14  *Martin*, 562 U.S. 307, 319, 131 S. Ct. 1120, 1129 (2011) ("'A court need not determine whether
15  counsel's performance was deficient . . . if it is easier to dispose of an ineffectiveness claim on the
16  ground of lack of sufficient prejudice.'") (alterations and brackets omitted); *accord People v.*
17  *Mesa*, 144 Cal. App.4th 1000, 1008 (Cal. App. 2006); *see, e.g., Korn v. US*, 937 F. Supp.2d 1182,
18  1195 (C.D. Cal. 2013) (Fairbank, J.).  Petitioner Cadavid fails to show that if trial counsel had done
19  everything he contends a competent lawyer had to do, there would have been a reasonable

---

[1] The Report recommended declining to consider the IAC new-trial claim because petitioner has not shown that he exhausted this claim in California state court.  *See* Doc 244 at 39 lines 13-19.  But this Court chooses to exercise its discretion to "deny an unexhausted [habeas claim] on the merits . . . when it is perfectly clear that the applicant does not raise even a colorable federal claim."  *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005) (following sister circuits in concluding that AEDPA, 28 U.S.C. section 2254(b)(2) codified the Supreme Court's decision in *Granberry v. Greer*, 481 U.S. 129, 135, 107 S. Ct. 1671 (1987)).  *See, e.g., Flynn v. Asuncion*, 2017 WL 337976, *1 (C.D. Cal. Jan. 23, 2017) (Fairbank, J.) ("[T]he Court has exercised its discretion to deny such claims on the merits, without making any conclusive determination as to whether they have been exhausted in state court, pursuant to *Cassett*. . . .").

probability that the trial's outcome would have been more favorable to him.[2]

  **The R&R begins its analysis of this claim's prejudice prong by noting that the Saint Francis records** reveal that after arresting petitioner, the police brought him directly to the ER, where he went limp, was unresponsive to verbal stimuli, and suffered a "syncopal episode", i.e., a "loss of consciousness and postural tone caused by diminished cerebral blood flow", Stedman's Medical Dictionary p. 1887 (28th ed. 2006), whereupon he was admitted to the hospital at 7:10 p.m. (about an hour after the conclusion of the incident). *See* R&R at 28:1-7 w/ n.11.

  But evidence that petitioner suffered a syncopal episode *after* the incident, has no logical tendency to establish that he was having a seizure or was mentally impaired by the aftermath of a seizure *during the incident* (from his entry into the apartment until his flight, when he punched a neighbor and scaled a wall in an attempt to escape). The same is true of the Saint Francis notation that petitioner was *possibly* suffering from a seizure; it does not necessarily imply, and does not make it any likelier that petitioner was suffering a seizure or seizure aftermath during the incident.

<u>No Reasonable Probability of Successful Mental-Condition Defense Based on Intoxication</u>

  **The Saint Francis records state that petitioner had been prescribed Dilantin and phenobarbitol**, *see* R&R at 28:8-9. But this does not necessarily mean that there was Dilantin or phenobarbitol in petitioner's blood at the time of the test (or during his earlier invasion of Vento's home). The fact that he had been prescribed those drugs had no tendency to establish when he had last taken them, let alone what the concentration of those drugs was (if any) during the incident.

  **The R&R also notes that a blood test administered at Saint Francis showed an opiate and a cannabinoid in petitioner's blood.** *See* R&R at 28:9-12. In finding *Strickland* prejudice,

---

[2]  This Court has <u>not</u> required petitioner to show that competent representation "more likely than not" would have led to a better outcome at trial. *See Nix v. Whiteside*, 475 U.S. 157, 175, 106 S. Ct. 988, 998 (1986) ("[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under *Strickland* . . . .").

the R&R relies heavily on the testimony of the neurologist hired for the federal hearing, Dr. Zardouz. Zardouz opined that during petitioner's entry into and presence in Vento's apartment, his "cognitive deficits associated with his epilepsy and other combined factors strongly impaired his state of mind and ability to evaluate the situation and control his actions." R&R at 30 (quoting Pet. Ex. 1 at 2). Zardouz also opined that during the incident petitioner was "not in a conscious, reasoned, and volitional control over his activities", *id*. Zardouz asserted that during the incident, petitioner was "operating under a seizure episode combined with alcohol and drug intoxication" and thus could not "appreciat[e] the impact and consequences of his actions", R&R at 30 (quoting Pet. Ex. 1 at 5).

**Petitioner and the R&R do not identify record evidence that there was any Dilantin or phenobarbitol in his blood during his invasion of Vento's home and his subsequent flight from her building. Similarly, they adduce no record evidence as to the concentration of any non-prescription drug** – opiate, cannabinoid, or other – other than alcohol in petitioner's blood at the time of the test. Nor do they point to necessary expert testimony extrapolating from opiate and cannabinoid concentrations at the time of the blood test to their concentrations during the incident. *See People v. Klein*, 2016 WL 2905277, *2 (Cal. App. Apr. 18, 2016). Consequently, if the judge had been presented with the Saint Francis records and a defense neurologist's testimony interpreting those records, the judge still would have been unable to determine the concentration of any opiate or cannabinoid in petitioner's blood during the incident.

**The blood test reported a blood alcohol content ("BAC") of 0.215 (Doc 244 at 28:11-12). But neither petitioner nor R&R identifies record evidence extrapolating from his BAC at Saint Francis to his BAC during the incident, which was the relevant BAC.** *See People v. McKiernan*, 2010 WL 3609173, *3 (Cal. App. Sept. 17, 2010) ("The BAC pertinent to the prosecution's case was not [his] BAC at 3:04 a.m. when the nurse drew his blood, but rather his BAC at 12:55 a.m. when he drove to evade police. Thus, the prosecution asked [a criminalist assigned to the forensic alcohol section of the sheriff's crime lab] to extrapolate [his] BAC at the time of the pursuit from the data contained in the laboratory packet and previously measured and checked by [the expert].").

1       **Petitioner and the R&R also fail to identify record evidence explaining the method and assumptions that the expert would employ to make the extrapolation.** *See In re Lauren N.*, 2006 WL 226199, *6 (Cal. App. Jan. 31, 2006) (forensic alcohol analyst was "asked to assume a BAC of .08 . . . obtained from a blood sample taken two hours after driving", and the analyst "used certain assumptions, such as alcohol peaking and burn-off, to extrapolate that the hypothetical person would have" had a BAC between about 0.075 and 0.085 when she was driving).

**Most seriously, petitioner and the R&R do not cite expert testimony in the record stating that reliable extrapolation of petitioner's BAC even would have been possible under the circumstances.** *See People v. Klein*, 2016 WL 2905277, *2 (Cal. App. Apr. 18, 2016) (a forensic alcohol analyst from the county crime lab "said he could not extrapolate back an hour from the time of defendant's first test at 9:33 p.m., to determine defendant's BAC at that time, because defendant would have still be[en] at the absorption stage."); *McLean v. Moran*, 963 F.2d 1306, 1307 (9th Cir. 1992) (in DUI prosecution, a police criminalist "testified that a blood test does not indicate what the . . . BAC . . . was at the time of driving and that he could not extrapolate a person's BAC at the time of driving without more information, such as the quantity and type of drinks consumed, when the driver had started and stopped drinking, and what and when the driver had last eaten.").

In turn, neither petitioner nor the R&R identifies expert testimony in the record as to the typical or likely effect of the given concentration of cannabinoid, opiate, alcohol, or prescription drugs that were in petitioner's bloodstream during the incident, on his ability to form the specific intent required for burglary and robbery). **Therefore, a factfinder presented with this expanded record very likely would have rejected the neurologist's conclusion as inadequately supported.**

In addition to the neurologist's inadequately supported assertion that petitioner was too intoxicated during the incident to form the requisite intent, **the R&R relies on the notion that "petitioner's strange behavior left room to doubt what his intent was" during the incident, R&R at 32:26-28.** The R&R points to testimony that "petitioner was in Vento's home for a long

time and had several opportunities to take Vento's possessions, but he did not. Instead, he spent that time staring, or standing and sitting around, without trying to take anything." R&R at 32:26 to 33:2. The R&R reasons that "[e]xpert testimony explaining petitioner's mental condition would have helped to explain his odd behavior and would have supported the conclusion that petitioner did not form the intent to steal." R&R at 33:3-6 (citation to district-court decision omitted).

But the test for *Strickland* prejudice is not whether petitioner's behavior could allow a reasonable factfinder to harbor reasonable doubt as to whether he formed the requisite intent. **Moreover, petitioner proceeds on the premise that the prosecution had to prove he had the uninterrupted intent to rob Vento during every moment he was in her home. But neither petitioner nor the R&R adduces California authority for that notion, and it is only state law that defines and interprets the elements of an offense.** *See Boyer v. Belleque*, 659 F.3d 957, 959 (9th Cir. 2011) (referring to "specific intent to kill, as that element has been defined by Oregon state law and interpreted by the state appellate court"). **And it is state law that establishes the type and quantum of evidence that may, or must, be used to establish those elements.** *See Sanchez v. Montgomery*, 2016 WL 8732354, *8 (C.D. Cal. Mar. 22, 2016) (Gail Standish, M.J.) (analyzing "the type and quantum of evidence required under California law" to satisfy an element of a sentencing enhancement, the court noted that "the California state court's resolution of this state[-]law issue is binding for purposes of federal habeas review") (citing, *inter alia*, *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604 (2005)), *R&R adopted*, 2016 WL 8738138 (C.D. Cal. July 1, 2016).

The prosecution had to prove, beyond a reasonable doubt, that petitioner formed the requisite intent to rob before entering the apartment and before or while employing force or fear against Vento. **The fact that petitioner told the women that he would kill them – and Vento's granddaughter – if Vento did not give him money, is itself strong direct proof that petitioner had the intent to rob Vento at the time he made the statement – and that he was not too intoxicated to form that intent.** *See, e.g., People v. Arguilez*, 2003 WL 356705, *4 (Cal. App. Feb. 19, 2003) (*"[A] reasonable jury could find that* the manner and time of Arguilez's entry into the

Green residence, *threats to kill Green*, rummaging through the dresser drawers, and conduct to cover Green's *eyes are sufficient to show Arguilez had the specific intent to rob Green*.") (italics added).

Moreover, there was other ample evidence making it likely that even on this expanded record, the factfinder would conclude (1) that petitioner had the specific intent to rob before entering the apartment (the burglary); and (2) that petitioner had the specific intent to rob before or while employing force or fear against Vento, as evinced by his conduct and words at several junctures throughout his presence in Vento's home (the attempted robbery).[3] Specifically, petitioner has not contested the fact that he had the presence of mind to push Vento onto a bed and look through her dresser drawers; to tell neighbor Barbara Casillas that she had "the wrong apartment"; to grab Casillas and put her in a choke-hold; and to scale a wall and flee the scene. *See* Doc 222-1 at 45-52.

**As to the residential burglary**, "a burglary is complete, in that the elements have been satisfied, the moment one enters a structure with the intent to commit theft or any felony . . . ." *People v. Alvarado*, 87 Cal. App.4th 178, 185 (Cal. App. 6th Dist. 2001) (agreeing with party's statement to that effect) (citing *People v. Montoya*, 7 Cal.4th 1027, 1039-40, 874 P.2d 903 (Cal. 1994)), *rev. den.* (Cal. May 31, 2001). The value of the items that a defendant took or attempted to

---

[3]

"Section 211 of the California Penal Code defined 'robbery' as the 'felonious taking of personal property in the possession of another, from his person or immediate presence, and against [her] will, accomplished by means of force or fear.'" *Philips v. Woodford*, 267 F.3d 966, 982 (9th Cir. 2001). "'If the larcenous purpose does not arise until after the force [or fear] has been used against the victim, there is no 'joint operation of act and intent' necessary to constitute robbery." *Philips*, 267 F.3d at 982 (quoting *People v. Green*, 609 P.2d 468, 504, 27 Cal.3d 1 (Cal. 1980)); *see also People v. Seaton*, 28 P.3d 175, 201, 26 Cal.4th 598, 644 (Cal. 2001).

After-acquired intent refers to a situation where the intent to steal arises after the use of force or fear, resulting in a theft and not a robbery. *See People v. Castaneda*, 254 P.3d 249, 51 Cal.4th 1292, 1331 (Cal. 2011). *See, e.g., Saldivar v. Lewis*, 2014 WL 8815122, *8 (C.D. Cal. Dec. 2, 2014) (recommending denial of habeas petition and rejecting petitioner's argument "that his [California] robbery conviction cannot be sustained absent evidence that he 'conceived his intent to steal either before committing the act of force against the victim, or during the commission of that act.'"), *R&R adopted*, 2015 WL 2234403 (C.D. Cal. May 8, 2015), *aff'd*, No. 15-55829, – F. App'x –, 2018 WL 3099430 (9th Cir. June 25, 2018), *pet. cert. docketed*, No. 18-5772 (U.S. Aug. 28, 2018).

take is not an element of burglary in California. *See People v. Romero and Self*, 354 P.3d 983, 1004, 62 Cal.4th 1, 29 (Cal. 2015) (stating that "the minimal worth of the items taken" did not obviate the intent to steal), *cert. denied*, – U.S. –, 136 S. Ct. 1457 and – U.S. –, 136 S. Ct. 1466 (2016). Neither petitioner nor the R&R cites record evidence that Vento consented to him entering the apartment.

To the contrary, the undisputed evidence was that petitioner pushed the apartment door open without asking or knocking, that Vento was not at the door when she saw him push it open and enter (before physically forcing her to sit down and making her, in her words, so scared of him); and that he rummaged through Vento's drawers and "seemed to be looking for something." The judge would be justified in considering this quintessential evidence that when petitioner entered the dwelling, he intended to commit a felony in the dwelling, as California requires for residential burglary, namely robbery. Even if counsel had performed exactly as petitioner believes she should have, there is no reasonable probability that the judge would have acquitted him of first-degree residential burglary. Nor has petitioner marshaled record evidence to show a reasonable probability that more competent representation would have led the judge to convict him instead of a lesser-included offense.

## CONCLUSION

**To win relief on the IAC mental-condition claim, petitioner had the burden of showing that if his attorney had performed competently[4], there is a reasonable probability that he would have achieved a more favorable outcome at trial.** Petitioner's only attempt to meet this standard is an attempt to show a reasonable probability that if the trial judge were presented with a competent defense – including the expanded record introduced at the federal evidentiary hearing – the judge would have had reasonable doubt as to whether he formed the specific intent needed for these offenses. Petitioner has not carried that burden, and the Court must deny this claim as well.

---

[4] *See Andrews v. Davis*, 866 F.3d 994, 1019 (9th Cir. 2017) ("[D]eficient performance is performance that falls 'below an objective standard of reasonableness' and is thus outside of 'the range of *competence* demanded of attorneys in criminal cases.'") (quoting *Strickland v. Washington*, 466 U.S. 668, 686-87, 104 S. Ct. 2052 (1984)) (italics added).

"Habeas corpus is an 'extraordinary remedy' available only to those 'persons whom society has grievously wronged'", *Juan H. v. Allen*, 408 F.3d 1252, 1270 (9th Cir. 2005) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 633-34, 113 S. Ct. 1710 (1993)), and petitioner has not shown that this is such a case. He has not shown that his counsel's performance "'deprived [him] of a fair trial, a trial whose result is reliable.'" *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S. Ct. 838, 842 (1993) (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064)).

## ORDER

Petitioner's objection to the R&R **[Doc #247] is OVERRULED**.

Respondent's objection to the R&R **[Doc #249] is SUSTAINED.**

The Court declines to adopt page 27 line 1 through page 34 line 17 of the R&R [#244].

The Court declines to adopt page 39 lines 13 through 19 of the R&R [#244].

The remainder of the R&R is ADOPTED.

**The habeas corpus petition [Doc # 1] is DENIED.**

As required by Fed. R. Civ. P. 58(a), final judgment will be entered as a separate document.

The case shall be TERMINATED (JS-6).

IT IS SO ORDERED.

Dated: September 26, 2018

                                          Hon. Valerie Baker Fairbank
                                          Senior United States District Judge